**HEMPHILL COUNTY, Appellant,**

v.

**Walter ADAMS et al., Appellees.**

**No. 7613.**

Court of Civil Appeals of Texas.

Amarillo.

May 22, 1967.

Rehearing Denied June 19, 1967.

J. D. Crow, Canadian, for appellant.

Allen, Allen & Reavis and Jack M. Allen, Perryton, Lane & Douglass, and Don R. Lane, Pampa, for appellees.

CHAPMAN, Justice.

The Supreme Court of Texas in a Per Curiam opinion[1] properly reversed this court wherein we affirmed the trial court. The latter court overruled the motion for summary judgment of appellant, Hemphill County, and appellee, Lawyers Surety Corporation. Then after a day and a half of testimony before a jury, dismissed the jury and held the case of plaintiff, Hemphill County, was barred under the two-year statute of limitation.

The action filed by the county attorney of Hemphill County was for conversion of personal property but "Title 91–Limitations * * * 1. Limitations of Actions for Lands," Volume 16. Vernon's Ann.Tex. Civ.St., Article 5517 (whether intentional or not) provides: "The right of the State, all counties, incorporated cities and all school districts shall not be barred by any of the provisions of this Title, * * *." As we now are aware, Article 5526 in Volume 16A is also part of Title 91. Both the trial court and our court overlooked Article 5517 indexed under "Limitations, Actions for Lands." We assume appellant's counsel likewise did so, for no briefs called such statute to our attention. Since Article 5526 having to do with suits for conversion of personal property also comes under Title 91, Limitations, and this is a suit for conversion, it follows that no limitation runs against Hemphill County.

The Court of Civil Appeals of Eastland in Hemphill County v. Adams, 390 S.W.2d 546 (1965) in passing upon a summary judgment granted by the court for defendants, Harry Rathjen and Walter Adams, held there are clearly fact issues to be decided in the case. We agree, since limitation does not apply.

The trial of the case was subsequently started before a jury and before the testimony was completed dismissed by the trial judge upon two theories; i. e., (1) limitation, and (2) that the judge of said court was "convinced that the county attorney of Hemphill County filed this case on his own motion and without the consent or authority of the commissioners' court of Hemphill County, Texas, and that for each of said reasons said cause should be dismissed." Since the order of dismissal assumes the county attorney is without authority to file a suit in the absence of consent or authority of the Commissioners' Court of the county, we are squarely presented with the question as to whether as a matter of law he was without such authority on his own without

---

1. Hemphill County v. Adams, 408 S.W.2d 926 (Tex.1966).

the consent of the Commissioners' Court. We meet the question headon.

Article 5, Section 1 of the Constitution of Texas, Vernon's Ann.St., as amended 1891, established Commissioners' Courts. Article 5, Section 18 thereof provides, with respect to the duties of said court, as follows:

"Each county shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

The Supreme Court of Texas in 1883 in Looscan v. County of Harris, 58 Tex. 511, held:

"The commissioners' court, presided over by the county judge, is virtually a council vested with power to manage and direct all such material and financial interests of the county as the laws of the state have confided to its jurisdiction. The management of the financial affairs of the county have always heretofore been vested in tribunals which have existed at different times under various names and designations, such as county court, commissioners' court, etc.; they have, however, all been clothed with similar powers, and like duties have been imposed upon them. *The commissioners' court undoubtedly has the right to cause suits to be instituted in the name of and for the benefit of the county, and except where a concurrent right to do the same thing, or where an exclusive right in a specified case or cases is conferred upon some other tribunal or some other officer of the government, the commissioners' court*

*must be deemed to be the quasi executive head of the county, vested with exclusive power to determine when a suit shall be instituted in the name of and for the benefit of the county."* (Emphasis added.)

The Court then spelled out in detail the evils that in many instances would occur to a county if any official other than the Commissioners' Court had the authority to make decisions concerning the filing of law suits; i. e., judgments conclusive against the county to its financial embarrassment and against which the official guardians of the county's interest in financial matters would be rendered impotent to protect.

The only statute with which we are familiar that would give the county attorney the authority to make the decision for the county as to whether it would seek to recover the proceeds from two jeeps sold by Harry Rathjen after title had been transferred to him when he was no longer a county official or a member of the Civil Defense Council is Article 339, V.T.C.S. That statute provides that if a county attorney has knowledge " * * * that any officer in his * * * county entrusted with the collection or safe keeping of any public funds is in any manner whatsoever abusing the trust confided in him, or in any way failing to discharge his duties under the law, he shall institute such proceedings as are necessary to compel the performance of such duties by such officer and to preserve and protect the public interests."

On February 9, 1959, Hemphill County established a Civil Defense unit and appellee Harry Rathjen, then its sheriff, was appointed Director. Acquisition of various types of property was made by Mr. Rathjen from Texas Surplus Property Agency of Lubbock. The director paid his own funds to the Lubbock agency out of his individual bank account for the handling charges incident to such acquisition. Hemphill County Commissioners requisitioned through Rathjen certain items for various precincts and the director was reimbursed by the county. Among the many items acquired by the

Civil Defense unit through its director, Rathjen, were two jeeps. The machines were not operational and he expended approximately $1,105.52 to place them in working order, paying for such repairs out of his personal bank account.

The stated reasons for the acquisition of the jeeps were for disasters such as tornadoes and prairie fires. However, ranchers of the county during the interim purchased a four-wheel drive heavy-duty pickup. The county-owned two-way radio was installed therein rather than in one of the jeeps as Rathjen had intended. The jeeps then became of no value so far as the original intended purpose relating to their acquisition, were never used for such purposes, and were rarely used for any purpose during the time Rathjen was sheriff and director of the Civil Defense unit of the county. The testimony shows that at or about the time he was appointed postmaster he offered the jeeps to the county for the amount he had expended on them and the county speaking through its County Judge, was not interested. As above stated he later sold them, receiving less money for them than he had personally expended in order to make them operational. Suit was filed by the county attorney on behalf of Hemphill County for the $1,050.00 the jeeps were sold for, alleging conversion of that amount by Rathjen and Walter Adams, his successor as sheriff. Adams had transferred titles out of the county, one transfer being made to Ray Dudley Motor Co., Hemphill County, Texas, by Walter Adams, Sheriff. The other was made to Harry Rathjen, "Hemphill County, Texas, by Walter Adams, Sheriff." It is shown in the record that Rathjen received the money for the jeeps, but as heretofore stated, it was less than he had expended out of his personal account in making them operational.

Since the case was dismissed by the trial court before the testimony was completed it is not possible for us to tell from the present record if the case is of the type by which the county attorney would have the au-thority to obligate the county in filing it without the authority of the Commissioners' Court. There is an order passed by that Court to the effect that "[it] was not concerned with and in no sense approved the acquisition by Harry Rathjen, former Civil Defense Director of Hemphill County, Texas, of any donable surplus property except such items as were ordered and received by Hemphill County, and upon which Hemphill County paid the handling charges. The Commissioners' Court never knew about the sale of Jeep Vehicles until after such event, and did not approve said sale, and does not now approve said sale, *and does not believe it to be the Court's concern.*" (Emphasis added.)

The County Judge of Hemphill County testified that to his knowledge the county never put any money into the jeeps and that if he had considered Harry Rathjen had converted them from Hemphill County they would have filed some sort of action and pursued the matter.

The pleadings show no order by the Commissioners' Court to have the county attorney of the county file the suit. It is not a quo warranto proceeding. The record as it stands, uncompleted, does not show Rathjen was entrusted with the safe keeping of public funds in his capacity as director of the Civil Defense, nor that he was neglecting or abusing any public trust confided in him, nor failing to discharge his duties under the law. In fact, he was neither a sheriff nor any other county officer at the time of the sale of the jeeps. The facts, undeveloped as they are, do not in our opinion bring the case within Article 339 above mentioned. Bexar County v. Davis, 223 S.W. 558 (Tex.Civ.App.-San Antonio, 1920, writ ref'd); Edmondson v. Cumings, 203 S.W. 428 (Tex.Civ.App.-Galveston 1918, no writ); Harwell v. Ward County, 314 S.W.2d 868 (Tex.Civ.App.-El Paso, 1958 writ ref'd n. r. e.).

We have studied Terrell v. Greene, 88 Tex. 539, 31 S.W. 631 (1895) very carefully and do not believe the instant case, as pres-

ently developed, brings it within the rules of that case. As stated in Bexar County v. Davis, supra: "Undoubtedly, if the funds were misapplied by the collector or the treasurer, the district or county attorney was authorized, and it was made the duty of one or both, to sue the officer making such misapplication. That is all that is held in so far as applicable to this case, in the case of Terrell v. Greene, 88 Tex. 539, 31 S.W. 631 * * *."

There is not any way for us to know what the record would reveal if fully developed. As it stands now it would be a gross injustice for a County Commissioners' Court to ask a county officer to serve in an extra capacity above and beyond his elected duty, permit him to spend out of his own personal account more than eleven hundred dollars making operational two jeeps it did not order, need nor use, decline to take them for the charges against them, paid by the Civil Defense Director out of his personal account, pass an official order to the effect that the Court "does not believe it to be the Court's concern" and then take $1,050.00 from the former officer representing the proceeds from the jeeps that had cost the county nothing.

Only the county judge testifed. The testimony of the commissioners may show a different state of facts. Under the present state of the record, we hold it does not show Article 339 is applicable, but we do not by such holding preclude ourselves from a different holding if a full development of the case shows Mr. Rathjen as director of Civil Defense was entrusted with the collection or safe keeping of public funds; that he neglected or abused the trust confided in him in that respect or in any way failed to discharge his duties under the law in connection therewith. As we view the record, it will take a development of the complete facts before the trial court could pass upon the question of the legal right of the county attorney to file the suit without the authority of the Commissioners' Court. The facts upon the merits would be so closely related we perceive no reason why the trial on

the merits could not be held along with the question of the authority of the county attorney to file the suit.

The case is reversed and remanded with instructions that it be placed back upon the docket.