Mike **DRISCOLL**, Appellant,

v.

**HARRIS COUNTY COMMISSIONERS COURT, et al., Appellees.**

No. B14–84–241CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 15, 1984.

Rehearing Denied with Opinion Feb. 28, 1985.

Marsha L.W. Floyd, Dori A. Wind, Asst. County Attys., Houston, for appellant.

Joe H. Reynolds, Reynolds, Allen & Cook, David T. Harvin, Vinson & Elkins, Houston, for appellees.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION

PER CURIAM.

This appeal followed the denial of all relief requested in a declaratory judgment action. Although appellant presents twenty-four points of error, the central issues are those created by the conclusions of law construing the authority of the Harris County Toll Road Authority to employ private counsel and the authority of the Harris County Attorney to seek injunctive and declaratory judgment relief with reference to (1) the expenditure of county funds and (2) the creation by the commissioners court of the Harris County Toll Road Authority. We have been favored by excellent briefs by not only counsel for the parties to this appeal, but have also received amicus curiae briefs in support of appellant from the Tarrant County Criminal District Attorney, the Texas District and County Attorneys Association, the Attorney General of Texas and Common Cause of Texas. We reverse.

The case was submitted to the trial court on stipulated facts. Three witnesses additionally testified. We now present a concise statement of that evidence.

On September 22, 1983, the Harris County Commissioners Court adopted an order canvassing the returns and declaring the results of a county bond election which authorized the creation of the Harris County Toll Road Authority and the construction of toll roads in Harris County in accordance with Article 6795b–1. Tex.Rev. Civ.Stat.Ann. art. 6795b–1 (Vernon 1960 and Supp.1984). On the same day the commissioners court designated the members of the commissioners court as the operating board of the authority and further authorized the preparation and legal documentation for the issuance of fifty million dollars in toll road revenue and unlimited tax bonds. In connection with the issuance of these bonds the operating board engaged the law firm of Vinson & Elkins to serve as counsel. On November 8, 1983, the operating board entered an order engaging the law firm of Fulbright & Jaworski as special counsel for the Toll Road Authority. The Harris County Attorney objected to the employment of special counsel, and informed the commissioners court that his office was capable of doing all the work in connection with the acquisition of the rights-of-way, and other related matters. He further informed commissioners court that the employment of private attorneys without the input of his office was contrary to law and should they persist, legal action would result. They persisted, and consequently the county attorney filed this lawsuit against commissioners court, all the members thereof, the county auditor, the county treasurer, Vinson & Elkins and Fulbright & Jaworski.

At appellant's request the trial court made numerous findings of fact and conclusions of law. Concerning the authority of the Toll Road Authority to employ private counsel, the trial court made the following conclusions:

12. Because the Harris County Toll Road Authority is a department of

county government, Tex.Rev.Civ. Stat. art. 334 and Tex.Rev.Civ.Stat. Ann. art. 2372p are applicable to the issues involved in the above-entitled and numbered cause so far as they are not in conflict with the provisions of art. 6795b–1.

13. Because art. 6795b–1 is the subsequently enacted general law, applicable only in the event a county toll road project is being developed, constructed, and operated, Article 6795b–1 constitutes an exception to any provision of Tex.Rev.Civ.Stat. Ann. art. 2372p where art. 6795b–1 and art. 2372p conflict.

14. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 specifically authorizes the Operating Board of the Harris County Toll Road Authority to employ private legal counsel to provide legal services in connection with the development, construction, operation and management of the Harris County Toll Road Authority.

16. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 constitutes an exception to the provisions of art. 2372p which are in conflict with the provisions of art. 6795b–1.

19. Tex.Rev.Civ.Stat.Ann. art. 331h imposes no duties on county attorneys beyond those duties already imposed upon county attorneys, criminal district attorneys and district attorneys other than the duty to represent the Harris County Flood Control District.

While the judgment of the court does not specifically state that the Operating Board need not comply with the provisions of Article 2372p in employing private attorneys, in oral argument both sides agreed that was the necessary result of the court's order. For the reasons set out in the following discussion, we respectfully disagree with this conclusion.

Article 5, Section 21 of the Texas Constitution provides for the creation of the office of county attorney in those counties not served by a criminal district attorney and states that "[The] County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature." In the early case of *Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052 (1905), the supreme court recognized this provision as being "very broad" and there found the main purpose of the provision was to make it the duty of the county attorney or the district attorney to represent the state in criminal cases. However, in accordance with the mandate of Article 5, Section 21, the legislature has occasionally provided additional duties for district and county attorneys. The only general statute prescribing the duties of the county attorney is Article 334, providing that district and county attorneys "upon request, shall give an opinion or advice in writing to any county or precinct officer of their district or county, touching their official duties." Tex.Rev.Civ.Stat.Ann. art. 334 (Vernon 1973). On the other hand, special statutes from time to time, have been enacted. One of the special statutes regulating the duties of the county attorney is Article 331h creating the office of Harris County Attorney and prescribing his duties, as follows:

It shall be the primary duty of the County Attorney of Harris County or his assistants to represent the State of Texas, Harris County and the officials of such county in all *civil* matters pending before the courts of Harris County and any other courts where the State of Texas, Harris County and the officials of such county have matters pending. It is understood that the County Attorney will represent the State of Texas, Harris County and the officials of such county in such *civil* matters as is now required by law of Criminal District Attorneys, District Attorneys, and County Attorneys with the exception that the County Attorney shall represent the Flood Control District of Harris County and per-

form any and all other duties imposed by this Act without any additional fee, compensation or perquisite other than that paid by Harris County out of its officers salary fund. (Emphasis supplied).

Tex.Rev.Civ.Stat.Ann. art. 331h § 3 (Vernon 1973). Prior to the enactment of this statute, Harris County did not have a county attorney as it was served by a resident criminal district attorney. With the passage of this act and the act creating the office of the district attorney for the criminal district court of Harris County, the office of criminal district attorney was abolished. *See* Tex.Rev.Civ.Stat.Ann. art. 326k–26 (Vernon 1973).

There are three unique provisions of Article 331h:

1. It attempts to limit the county attorney's jurisdiction to civil matters. No other county attorneys office in Texas is so limited.

2. It provides that he shall represent the state, county and county officials in all civil matters pending before the courts of Harris County. No other statute imposes such duties upon any other county attorney in the state.

3. It specifically provides that he shall represent the Harris County Flood Control District. This was undoubtedly inserted by the legislature as a result of Opinion No. S–03 of the Attorney General dated February 9, 1953, where it was ruled there was no duty upon the Criminal District Attorney of Harris County to represent the county generally in civil matters *or* the Harris County Flood Control District.[1]

These provisions of Article 331h lead us to the conclusion that it is a special statute imposing specific duties upon the county attorney of Harris County which are not imposed upon county attorneys, criminal district attorneys or district attorneys generally, and for these reasons disagree with conclusion of law number 19. This conclusion is further fortified, we believe, when we consider the later enacted statute, Article 2372p, passed by the legislature in 1961. This act applies only to counties having a population in excess of 500,000 and authorizes the commissioners court:

to employ special counsel ... to represent the county in all suits brought by or against such county, and particularly with authority to render aid and work with the Commissioners Court, the county engineer and other county employees in the preparation of documents necessary in the acquisition of rights-of-way for the county, or in cases where the county is required to obtain rights-of way for state highways, or to assist in the acquisition of such rights-of-way; to represent the county in all condemnation proceedings for the acquisition of rights-of-way for highways and other purposes where the right of eminent domain is given to counties.

Tex.Rev.Civ.Stat.Ann. art. 2372p (Vernon 1971). However, this authority to employ was *specifically* conditioned upon the input by the *county attorney*, and if there was no county attorney, then the district attorney or criminal district attorney was to participate in the process of employing special counsel. Article 2372p specifically provides:

[such] special counsel shall be named by the County Attorney ... and such employment shall be made for such time and on such terms as said County Attor-

---

**1.** In this regard, it is interesting to note that during the same legislative session when the office of Harris County Attorney was created, the legislature also authorized certain counties, including Harris, to establish a hospital district, and specifically provided that it "shall be the duty of the County Attorney, District Attorney or Criminal District Attorney, as the case may be, charged with the duty of representing the county in *civil* matters, to represent the Hospital District in all legal matters." Tex.Rev.Civ.Stat.

Ann. art., 4494n § 12 (Vernon 1976) (emphasis supplied). Of course, it was necessary for the legislature to specifically provide for county attorney representation of both the flood control district and the hospital district because, while both are in a sense administratively under the control of commissioners court, each is a separate governmental entity, independent and distinct within itself. *See Harris County Flood Control District v. Mann,* 135 Tex. 239, 140 S.W.2d 1098 (1940).

ney ... may deem proper and expedient, subject to the approval of the Commissioners Court.

We have been unable to locate any legislative history for this statute and counsel for both sides conceded in oral argument they could find none. We conclude, however, from a review of the statutes creating the various offices of county attorney, district attorney and criminal district attorney, and the absence of any general statutes prescribing the duties of each office, the legislature must have recognized the need and used this statute as a means of authorizing the commissioners courts in counties having a population in excess of 500,000 to employ special counsel to assist the various counties in the conduct of their business. We find no plausible explanation, however, for the legislature to have then limited the authority of the commissioners court to employ such counsel if there was a county attorney *unless* it recognized that: (1) a special statute had already been enacted for Harris County providing that the county attorney was to perform the duties it was addressing; and, (2) certain other populous counties had already, either with or without special legislation, provided for representation of the county in such civil matters by the county attorney, district attorney or criminal district attorney. This construction is consistent with the general rule that all statutes are presumed to be enacted by the legislature with full knowledge of the existing conditions of the law and with reference to it. *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (1942).

This brings us to a discussion of the relationship between Article 6795b–1 and Article 2372p as addressed in conclusions of law 13 and 16, and the agreed effect of these conclusions. We do not construe the trial court's conclusions of law to specifically hold there is conflict between 6795b–1 and 2372p. Again, neither counsel for appellant nor appellee contend there is, *in fact,* a conflict. We do construe the trial court's conclusions of law to be that since Article 6795b–1(1) was enacted subsequent to 2372p and (2) applies only to a county

toll road project, it constitutes an exception to Article 2372p. Again, we do not agree. The applicable portions of Article 2372p authorizing commissioners court to employ "special counsel" have been quoted above and need not be restated here. Material to consideration of this question are the portion of Article 2372p concerning the employment of special counsel, and Section 1 of Article 6795b–1 authorizing certain counties to construct, operate and maintain, among other things, a "turnpike, highway, or any combination of such facilities." Authorized costs include "the cost of construction, the costs of all property ..; the payment of the costs of condemning any such property, including both the payment of the award and the payment of the court costs and attorneys fees; the payment of all legal, fiscal and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the bonds." It is further provided in Section 1 that so long as such a project "has not been designated as part of the State Highway System and is not considered a Turnpike Project [as defined by statute], that part of the project (which has not been so designated and is not so considered) in each county shall be considered a part of the county road system of such county, *and all laws relating to the maintenance and operation of county roads are hereby made applicable to any project constructed or acquired hereunder in so far as they do not conflict with the provisions hereof."* (Emphasis supplied).

Section 5 of Article 6795b–1 authorizes the commissioners court, if it so chooses, to appoint an operating board to develop, construct and manage such a project. However, it is specifically provided that such board "shall have and may exercise, subject to such limitations and restrictions as may be prescribed by the Commissioners Court, *the same power and authority ... as may be exercised by the Commissioners Court* in regard to the development,

construction, operation, and management of a project." (Emphasis supplied). The section further specifically provides that such board *"subject to the restrictions and limitations prescribed by the Commissioners Court,"* shall have the power and authority "to design the project, to acquire necessary lands or rights-of-way or other property for the project by purchase, condemnation, or otherwise ... and to employ consultants, attorneys, engineers, financial advisors, agents and other employees or contractors in connection with the development, construction, operation and management of the project." (Emphasis supplied).

As pointed out above, the conclusion of the trial court as to whether there is a conflict between Article 6795b–1 and 2372p is, to say the least, vague. As presented to us, neither side contends there is conflict and both sides agree the effect of the conclusions of law and the judgment is that Article 6795b–1 is an exception to Article 2372p, that is, that the operating board was authorized to employ attorneys without complying with the terms of Article 2372p. We disagree with this construction of the statutes. Both statutes speak to the same subject, namely, the employment of counsel to represent the county in the acquisition, by condemnation or otherwise, of rights-of-way for the construction of county roads. Article 2372p, however, is a specific statute insofar as it limits the outright authority to hire such counsel (in counties having a population in excess of 500,000) if such county is represented by a county attorney, district attorney or criminal district attorney. Article 6795b–1 specifically provides that so long as the project is a part of the county road system, all laws relating to county roads are applicable to the project "in so far as they do not conflict with the provisions hereof." We must give effect to this plain wording of the statute and, unless there is a conflict between the two statutes, give effect to both. The trial court did not expressly find a conflict; neither appellant nor appellee contend there is a conflict, and we find there is no conflict.

In this state of the record we apply the well recognized rule expressed in *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138 (1962):

A statute may be repealed expressly or by implication. Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject. (Citation omitted). Repeals by implication are not favored, however, and laws relating to the same subject should be considered as though incorporated in the same act. If they can be harmonized and effect given to each when so considered, there is no repeal by implication.

*Gordon* 356 S.W.2d at 139. As previously explained, all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (1942). And when a new statute is passed dealing with a subject covered by an old law, if there is no express repeal, the presumption is that in enacting a new law the legislature intended the old statute to remain in operation. *State v. Humble Oil and Refining Co.,* 187 S.W.2d 93, 100 (Tex.Civ. App.—Waco 1945) (appeal to Supreme Court disallowed at 194 S.W.2d 811, Tex. Civ.App.—Waco 1946).

Under the tests set out by these cases it cannot be seriously argued that 6795b–1 (the later enactment) embraces all the law on the subject with which it deals because it expressly makes all laws relating to the maintenance and operation of county roads applicable. It is a simple matter to harmonize the provisions of the two acts, at least as they apply to Harris County: the commissioners court is authorized to employ attorneys, but in order to do so, it must comply with the restrictions of Article 2372p.

This brings us to consideration of conclusion of law number 14 that Article 6795b–1 "specifically authorizes the Operating Board of the Harris County Toll Road Authority to employ private counsel to provide legal services in connection with the devel-

opment, operation and management of the Harris County Toll Road Authority." While faced with the same problem concerning the ambiguity of the conclusion, we again address the issue on the basis of the agreement of counsel for both sides previously stated. With this understanding, we again disagree with the conclusion. As previously concluded, the commissioners court of Harris County could not employ counsel under the provisions of Article 6795b–1 without complying with Article 2372p. Furthermore, Section 5b of Article 6795b–1 specifically provides that the operating board has no greater power or authority than commissioners court. We therefore hold that in order for the operating board appointed under the authority of Article 6795b–1 to employ counsel, it must comply with the provisions of Article 2372p.

Our holding on the conclusions of law as discussed above necessarily compels us to further conclude that conclusion of law number 22, providing:

> [T]he employment of legal counsel other than the County Attorney to perform legal services for the Operating Board of Harris County Toll Road Authority does not constitute an usurpation of the powers and public duties of the office of the County Attorney of Harris County, Texas in contravention of the Constitution and laws of the State of Texas.

is erroneous, and we so hold.

In various points of error appellant attacks the trial court's conclusions of law that, as county attorney, he had neither the authority to seek an injunction against or declaratory judgment with reference to the expenditure of funds belonging to Harris County nor the requisite justiciable interest to attack either the formation of the Toll Road Authority or the appointment of the commissioners court as the members of the operating board of the Toll Road Authority.

Appellant brought suit only in his official capacity as county attorney. The trial court found that he had standing to seek declaratory relief concerning his duties as county attorney, but found that as county attorney of Harris County he (1) had no authority to seek an injunction or declaratory judgment with reference to the expenditure of county funds, and (2) lacked the requisite justiciable interest to attack either the formation of the Harris County Toll Road Authority or the appointment of the operating board. Appellant argues that under the broad provisions of the Uniform Declaratory Judgments Act he has the authority not only to bring an action concerning his duties, but also as to these matters. Tex.Rev.Civ.Stat.Ann. art. 2524–1 (Vernon 1965). He cites no authority so holding and we find none. It has generally been held that the county attorney has no authority to institute a proceeding for or on behalf of the county unless he is given that power by statute or order of the commissioners court. *Looscan v. County of Harris*, 58 Tex. 511 (1883); *County of Ward v. King*, 454 S.W.2d 239 (Tex.Civ.App.—El Paso 1970, writ dism'd); *Wexler v. State*, 241 S.W. 231 (Tex.Civ. App.—Galveston 1922, no writ); *Duncan v. State*, 28 Tex.Civ.App. 447, 67 S.W. 903 (1902, no writ). We cannot read into the Uniform Declaratory Judgments Act any intent to change this rule. His authority being so restricted, it appears to follow, therefore, that the county attorney *in his official capacity* would not have the authority by injunction or declaratory judgment to seek relief against the expenditure of county funds. For the same reason, *in his official capacity*, we hold he lacked the requisite justiciable interest to attack the formation of the Authority or the appointment of the members of the board.

Finally, appellant contends the trial court erred in assessing all costs against him individually. He argues that it is "patently inconsistent" for the trial court to have found he was authorized to maintain in his official capacity the suit for a declaration of his duties and to then assess costs against him individually. The trial judge, of course, has wide discretion in assessing costs. If the only issue raised by appellant's pleadings was the one we sustain, then to assess costs against him individual-

ly could quite easily be found to be an abuse of discretion. Considering, however, all the matters before the court, we cannot find an abuse of discretion on the part of the trial court. We will, however, exercise our discretion and assess all costs of this appeal against appellees.

We do not consider the other assignments of error to be controlling points in the case and they are overruled.

This brings us to the proper disposition by this court of this appeal. Appellant asks that pursuant to Rule 434, Texas Rule of Civil Procedure, we reverse and "render the judgment the Court below should have rendered." While we normally would do so, we believe that because of the number and complexity of the issues involved, the trial court, with the active assistance of the attorneys involved, is in a more advantageous position to enter the proper judgment.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

Before the court en banc.

## ON MOTION FOR REHEARING

ROBERTSON, Justice.

Following the panel opinion previously rendered in this case, both appellant and appellees filed motions for rehearing, and at appellees' request, the rehearing was before the full court. The previous panel opinion is withdrawn and the following is substituted.

This appeal followed the denial of all relief requested in a declaratory judgment action. Although appellant presents twenty-four points of error, the central issues are those created by the conclusions of law construing the authority of the Harris County Toll Road Authority to employ private counsel and the authority of the Harris County Attorney to seek injunctive and declaratory judgment relief with reference to (1) the expenditure of county funds and (2) the creation by the commissioners court of the Harris County Toll Road Authority. We have been favored by excellent briefs by not only counsel for the parties to this appeal, but have also received amicus curiae briefs in support of appellant from the Tarrant County Criminal District Attorney, the Texas District and County Attorneys Association, the Attorney General of Texas and Common Cause of Texas. We reverse.

The case was submitted to the trial court on stipulated facts. Three witnesses additionally testified. We now present a concise statement of that evidence.

On September 22, 1983, the Harris County Commissioners Court adopted an order canvassing the returns and declaring the results of a county bond election which authorized commissioners court to issue bonds for the construction of toll roads in Harris County in accordance with Article 6795b–1. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 (Vernon 1960 and Supp.1984). On the same day the commissioners court designated the members of the commissioners court as the operating board of the authority and further authorized the preparation and legal documentation for the issuance of fifty million dollars in toll road revenue and unlimited tax bonds. In connection with the issuance of these bonds the operating board engaged the law firm of Vinson & Elkins to serve as counsel. On November 8, 1983, the operating board entered an order engaging the law firm of Fulbright & Jaworski as special counsel for the Toll Road Authority. The Harris County Attorney objected to the employment of special counsel, and informed the commissioners court that his office was capable of doing all the work in connection with the acquisition of the rights-of-way, and other related matters. He further informed commissioners court that the employment of private attorneys without the input of his office was contrary to law and should they persist, legal action would result. They persisted, and consequently the county attorney, in his official capacity, filed this lawsuit against commissioners court, all the members thereof, the county auditor, the county treasurer, Vinson & Elkins and Fulbright & Jaworski.

At appellant's request the trial court made numerous findings of fact and conclusions of law. Concerning the authority of the Toll Road Authority to employ private counsel, the trial court made the following conclusions:

12. Because the Harris County Toll Road Authority is a department of county government, Tex.Rev.Civ. Stat. art. 334 and Tex.Rev.Civ.Stat. Ann. art. 2372p are applicable to the issues involved in the above-entitled and numbered cause so far as they are not in conflict with the provisions of art. 6795b–1.

13. Because art. 6795b–1 is the subsequently enacted general law, applicable only in the event a county toll road project is being developed, constructed, and operated, Article 6795b–1 constitutes an exception to any provision of Tex.Rev.Civ.Stat. Ann. art. 2372p where art. 6795b–1 and art. 2372p conflict.

14. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 specifically authorizes the Operating Board of the Harris County Toll Road Authority to employ private legal counsel to provide legal services in connection with the development, construction, operation and management of the Harris County Toll Road Authority.

16. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 constitutes an exception to the provisions of art. 2372p which are in conflict with the provisions of art. 6795b–1.

19. Tex.Rev.Civ.Stat.Ann. art. 331h imposes no duties on county attorneys beyond those duties already imposed upon county attorneys, criminal district attorneys and district attorneys other than the duty to represent the Harris County Flood Control District.

While the judgment of the court does not specifically state that the Operating Board need not comply with the provisions of Article 2372p in employing private attorneys, in oral argument both sides agreed that was the necessary result of the court's order. For the reasons set out in the following discussion, we respectfully disagree with this conclusion.

Article 5, Section 21 of the Texas Constitution provides for the creation of the office of county attorney in those counties not served by a criminal district attorney and states that "[The] County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature." In the early case of *Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052 (1905), the supreme court recognized this provision as being "very broad" and there found the main purpose of the provision was to make it the duty of the county attorney or the district attorney to represent the state in criminal cases. However, in accordance with the mandate of Article 5, Section 21, the legislature has occasionally provided additional duties for district and county attorneys. The only general statute prescribing the duties of the county attorney is Article 334, providing that district and county attorneys "upon request, shall give an opinion or advice in writing to any county or precinct officer of their district or county, touching their official duties." Tex.Rev.Civ.Stat.Ann. art. 334 (Vernon 1973). On the other hand, special statutes from time to time, have been enacted. One of the special statutes regulating the duties of the county attorney is Article 331h creating the office of Harris County Attorney and prescribing his duties, as follows:

It shall be the primary duty of the County Attorney of Harris County or his assistants to represent the State of Texas, Harris County and the officials of such county in all *civil* matters pending before the courts of Harris County and any other courts where the State of Texas, Harris County and the officials of such county have matters pending. It is understood that the County Attorney will

represent the State of Texas, Harris County and the officials of such county in such *civil* matters as is now required by law of Criminal District Attorneys, District Attorneys, and County Attorneys with the exception that the County Attorney shall represent the Flood Control District of Harris County and perform any and all other duties imposed by this Act without any additional fee, compensation or perquisite other than that paid by Harris County out of its officers salary fund. (Emphasis supplied).

Tex.Rev.Civ.Stat.Ann. art. 331h § 3 (Vernon 1973). Prior to the enactment of this statute, Harris County did not have a county attorney as it was served by a resident criminal district attorney. With the passage of this act and the act creating the office of the district attorney for the criminal district court of Harris County, the office of criminal district attorney was abolished. *See* Tex.Rev.Civ.Stat.Ann. art. 326k–26 (Vernon 1973).

■ There are three unique provisions of Article 331h:

1. It attempts to limit the county attorney's jurisdiction to civil matters. No other county attorney's office in Texas is so limited, with the possible exception of Webb County. *See* Tex. Rev.Civ.Stat.Ann. art. 326k–38b (Vernon Supp.1984).

2. It provides that he shall represent the state, county and county officials in all civil matters pending before the courts of Harris County. No other statute imposes such duties upon any other county attorney in the state. To the extent there may be some similarity between the duties of the county attorney of Webb County and appellant, it is noted that in Webb County the county attorney is obligated "to handle and prosecute all juvenile, child welfare, and mental health cases in Webb County *and the other civil cases* in Webb County where *the State of Texas is a party,* in addition to the other duties imposed by law on the office of county attorney." (Emphasis supplied)

3. It specifically provides that he shall represent the Harris County Flood Control District. This was undoubtedly inserted by the legislature as a result of Opinion No. S–03 of the Attorney General dated February 9, 1953, where it was ruled there was no duty upon the Criminal District Attorney of Harris County to represent the county generally in civil matters *or* the Harris County Flood Control District.[1]

■ These provisions of Article 331h lead us to the conclusion that it is a special statute imposing specific duties upon the county attorney of Harris County which are not imposed upon county attorneys, criminal district attorneys or district attorneys generally, and for these reasons disagree with conclusion of law number 19. This conclusion is further fortified, we believe, when we consider the later enacted statute, Article 2372p, passed by the legislature in 1961. This act applies only to counties having a population in excess of 500,000 and authorizes the commissioners court:

> to employ special counsel ... to represent the county in all suits brought by or against such county, and particularly with authority to render aid and work with the Commissioners Court, the coun-

---

[1] In this regard, it is interesting to note that during the same legislative session when the office of Harris County Attorney was created, the legislature also authorized certain counties, including Harris, to establish a hospital district, and specifically provided that it "shall be the duty of the County Attorney, District Attorney or Criminal District Attorney, as the case may be, charged with the duty of representing the county in *civil* matters, to represent the Hospital District in all legal matters." Tex.Rev.Civ.Stat. Ann. art. 4494n § 12 (Vernon 1976) (emphasis supplied). Of course, it was necessary for the legislature to specifically provide for county attorney representation of both the flood control district and the hospital district because, while both are in a sense administratively under the control of commissioners court, each is a separate governmental entity, independent and distinct within itself. *See Harris County Flood Control District v. Mann,* 135 Tex. 239, 140 S.W.2d 1098 (1940).

ty engineer and other county employees in the preparation of documents necessary in the acquisition of rights-of-way for the county, or in cases where the county is required to obtain rights-of-way for state highways, or to assist in the acquisition of such rights-of-way; to represent the county in all condemnation proceedings for the acquisition of rights-of-way for highways and other purposes where the right of eminent domain is given to counties.

Tex.Rev.Civ.Stat.Ann. art. 2372p (Vernon 1971). However, this authority to employ was *specifically* conditioned upon the input by the *county attorney*, and if there was no county attorney, then the district attorney or criminal district attorney was to participate in the process of employing special counsel. Article 2372p specifically provides:

> [such] special counsel shall be named by the County Attorney ... and such employment shall be made for such time and on such terms as said County Attorney ... may deem proper and expedient, subject to the approval of the Commissioners Court.

■ We have been unable to locate any legislative history for this statute and counsel for both sides conceded in oral argument they could find none. We conclude, however, from a review of the statutes creating the various offices of county attorney, district attorney and criminal district attorney, and the absence of any general statutes prescribing the duties of each office, the legislature must have recognized the need and used this statute as a means of authorizing the commissioners courts in counties having a population in excess of 500,000 to employ special counsel to assist the various counties in the conduct of their business. We find no plausible explanation, however, for the legislature to have then limited the authority of the commissioners court to employ such counsel if there was a county attorney *unless* it recognized that: (1) a special statute had already been enacted for Harris County providing that the county attorney was to per-

form the duties it was addressing; and, (2) certain other populous counties had already, either with or without special legislation, provided for representation of the county in such civil matters by the county attorney, district attorney or criminal district attorney. This construction is consistent with the general rule that all statutes are presumed to be enacted by the legislature with full knowledge of the existing conditions of the law and with reference to it. *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125 (1942).

■ This brings us to a discussion of the relationship between Article 6795b–1 and Article 2372p as addressed in conclusions of law 13 and 16, and the agreed effect of these conclusions. We do not construe the trial court's conclusions of law to specifically hold there is conflict between 6795b–1 and 2372p. Again, neither counsel for appellant nor appellee contend there is, *in fact*, a conflict. We do construe the trial court's conclusions of law to be that since Article 6795b–1(1) was enacted subsequent to 2372p and (2) applies only to a county toll road project, it constitutes an exception to Article 2372p. Again, we do not agree. The applicable portions of Article 2372p authorizing commissioners court to employ "special counsel" have been quoted above and need not be restated here. Material to consideration of this question is the portion of Article 2372p concerning the employment of special counsel, and Section 1 of Article 6795b–1 authorizing certain counties to construct, operate and maintain, among other things, a "turnpike, highway, or any combination of such facilities." Authorized costs include "the cost of construction, the costs of all property ...; the payment of the costs of condemning any such property, including both the payment of the award and the payment of the court costs and attorneys fees; the payment of all legal, fiscal and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the bonds." It is further provided in

Section 1 that so long as such a project "has not been designated as part of the State Highway System and is not considered a Turnpike Project [as defined by statute], that part of the project (which has not been so designated and is not so considered) in each county shall be considered a part of the county road system of such county, *and all laws relating to the maintenance and operation of county roads are hereby made applicable to any project constructed or acquired hereunder in so far as they do not conflict with the provisions hereof."* (Emphasis supplied).

Section 5 of Article 6795b–1 authorizes the commissioners court, if it so chooses, to appoint an operating board to develop, construct and manage such a project. However, it is specifically provided that such board "shall have and may exercise, subject to such limitations and restrictions as may be prescribed by the Commissioners Court, *the same power and authority . . . as may be exercised by the Commissioners Court* in regard to the development, construction, operation, and management of a project." (Emphasis supplied). The section further specifically provides that such board *"subject to the restrictions and limitations prescribed by the Commissioners Court,"* shall have the power and authority "to design the project, to acquire necessary lands or rights-of-way or other property for the project by purchase, condemnation, or otherwise . . . and to employ consultants, attorneys, engineers, financial advisors, agents and other employees or contractors in connection with the development, construction, operation and management of the project." (Emphasis supplied).

■ As pointed out above, the conclusion of the trial court as to whether there is a conflict between Article 6795b–1 and 2372p is, to say the least, vague. As presented to us, neither side contends there is conflict and both sides agree the effect of the conclusions of law and the judgment is that Article 6795b–1 is an exception to Article 2372p, that is, that the operating board was

authorized to employ attorneys without complying with the terms of Article 2372p. We disagree with this construction of the statutes. Both statutes speak to the same subject, namely, the employment of counsel to represent the county in the acquisition, by condemnation or otherwise, of rights-of-way for the construction of county roads. Article 2372p, however, is a specific statute insofar as it limits the outright authority to hire such counsel (in counties having a population in excess of 500,000) if such county is represented by a county attorney, district attorney or criminal district attorney. Article 6795b–1 specifically provides that so long as the project is a part of the county road system, all laws relating to county roads are applicable to the project "in so far as they do not conflict with the provisions hereof." We must give effect to this plain wording of the statute and, unless there is a conflict between the two statutes, give effect to both. The trial court did not expressly find a conflict; neither appellant nor appellees contend there is a conflict, and we find there is no conflict.

■ In this state of the record we apply the well recognized rule expressed in *Gordon v. Lake*, 163 Tex. 392, 356 S.W.2d 138 (1962):

> A statute may be repealed expressly or by implication. Where a later enactment is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject. (Citation omitted). Repeals by implication are not favored, however, and laws relating to the same subject should be considered as though incorporated in the same act. If they can be harmonized and effect given to each when so considered, there is no repeal by implication.

*Gordon*, 356 S.W.2d at 139. As previously explained, all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125 (1942). And when a new statute is passed dealing with a subject covered by an old law, if

there is no express repeal, the presumption is that in enacting a new law the legislature intended the old statute to remain in operation. *State v. Humble Oil and Refining Co.*, 187 S.W.2d 93, 100 (Tex.Civ.App.—Waco 1945) (appeal to Supreme Court disallowed at 194 S.W.2d 811, Tex.Civ.App.—Waco 1946).

■ Under the tests set out by these cases it cannot be seriously argued that 6795b–1 (the later enactment) embraces all the law on the subject with which it deals because it expressly makes all laws relating to the maintenance and operation of county roads applicable. It is a simple matter to harmonize the provisions of the two acts, at least as they apply to Harris County: the commissioners court is authorized to employ attorneys, but in order to do so, it must comply with the restrictions of Article 2372p.

■ This brings us to consideration of conclusion of law number 14 that Article 6795b–1 "specifically authorizes the Operating Board of the Harris County Toll Road Authority to employ private counsel to provide legal services in connection with the development, operation and management of the Harris County Toll Road Authority." While faced with the same problem concerning the ambiguity of the conclusion, we again address the issue on the basis of the agreement of counsel for both sides previously stated. With this understanding, we again disagree with the conclusion. As previously concluded, the commissioners court of Harris County could not employ counsel under the provisions of Article 6795b–1 without complying with Article 2372p. Furthermore, Section 5b of Article 6795b–1 specifically provides that the operating board has no greater power or authority than commissioners court. We therefore hold that in order for the operating board appointed under the authority of Article 6795b–1 to employ counsel, it must comply with the provisions of Article 2372p.

■ Our holding on the conclusions of law as discussed above necessarily compels us to further conclude that conclusion of law number 22, providing:

[T]he employment of legal counsel other than the County Attorney to perform legal services for the Operating Board of Harris County Toll Road Authority does not constitute an usurpation of the powers and public duties of the office of the County Attorney of Harris County, Texas in contravention of the Constitution and laws of the State of Texas.

is erroneous, and we so hold.

In various points of error appellant attacks the trial court's conclusions of law that, as county attorney, he had neither the authority to seek an injunction against or declaratory judgment with reference to the expenditure of funds belonging to Harris County nor the requisite justiciable interest to attack either the formation of the Toll Road Authority or the appointment of the commissioners court as the members of the operating board of the Toll Road Authority.

■ Appellant brought suit only in his official capacity as county attorney. The trial court found that he had standing to seek declaratory relief concerning his duties as county attorney, but found that as county attorney of Harris County he (1) had no authority to seek an injunction or declaratory judgment with reference to the expenditure of county funds, and (2) lacked the requisite justiciable interest to attack either the formation of the Harris County Toll Road Authority or the appointment of the operating board. Appellant argues that under the broad provisions of the Uniform Declaratory Judgments Act he has the authority not only to bring an action concerning his duties, but also as to these matters. Tex.Rev.Civ.Stat.Ann. art. 2524–1 (Vernon 1965). He cites no authority so holding and we find none. It has generally been held that the county attorney has no authority to institute a proceeding for or on behalf of the county unless he is given that power by statute or order of the commissioners court. *Looscan v. County of Harris*, 58 Tex. 511 (1883); *County of Ward v. King*, 454 S.W.2d 239 (Tex.Civ.App.—El Paso 1970, writ dism'd);

*Wexler v. State,* 241 S.W. 231 (Tex.Civ. App.—Galveston 1922, no writ); *Duncan v. State,* 28 Tex.Civ.App. 447, 67 S.W. 903 (1902, no writ). We cannot read into the Uniform Declaratory Judgments Act any intent to change this rule. His authority being so restricted, it appears to follow, therefore, that the county attorney *in his official capacity* would not have the authority by injunction or declaratory judgment to seek relief against the expenditure of county funds, as was attempted here. For the same reason, *in his official capacity,* we hold he lacked the requisite justiciable interest to attack the formation of the Authority or the appointment of the members of the board.

 Finally, appellant contends the trial court erred in assessing all costs against him individually. He argues that it is "patently inconsistent" for the trial court to have found he was authorized to maintain in his official capacity the suit for a declaration of his duties and to then assess costs against him individually. We recognize, of course, that the trial judge has wide discretion in assessing costs. However, as previously noted, appellant was not before the court individually—he was there only in his official capacity as county attorney. We have not found any authority which would permit the assessment of costs in such manner as was done here. We hold the trial court abused his discretion in so doing and sustain appellant's point of error in this regard.

We do not consider the other assignments of error to be controlling points in the case and they are overruled.

This brings us to the proper disposition by this court of this appeal. Appellant asks that pursuant to Rule 434, Texas Rules of Civil Procedure, we reverse and "render the judgment the Court below should have rendered." While we normally would do so, we believe that because of the number and complexity of the issues involved, the trial court, with the active assistance of the attorneys involved, is in a more advantageous position to enter the proper judgment.

Both motions for rehearing are overruled and the judgment is reversed and remanded for further proceedings consistent with this opinion.

MURPHY, Justice, concurring.

I concur with the result reached by the majority. However, I respectfully disagree with the majority's holding that the County Attorney of Harris County in his official capacity does not have the authority by injunction or declaratory judgment to seek relief against the expenditure of county funds, and that he lacked the requisite justiciable interest to attack the formation of the authority or the appointment of the members of the board.

Appellant contends TEX.REV.CIV.STAT. ANN. art. 339 (Vernon 1973), provides the statutory authority for him to challenge the expenditure of funds for outside legal counsel. I agree. In view of this Court's holding that the operating board appointed under the authority of Article 6795b–1 to employ counsel must comply with the provisions of Article 2372p, the expenditure of funds for this purpose or the threatened expenditure of such funds for this purpose by any county officer entrusted with the collection or safe keeping of any public funds without compliance with Article 2372p could be a neglect of duty or an abuse of trust.

Article 339 provides:

When it shall come to the knowledge of any district or county attorney that any officer in his district or county entrusted with the collection or safe keeping of any public funds is in any manner whatsoever neglecting or abusing the trust confided in him, or in any way failing to discharge his duties under the law, he shall institute such proceedings as are necessary to compel the performance of such duties by such officer and to preserve and protect the public interests.

TEX.REV.CIV.STAT.ANN. art. 339 (Vernon 1973).

The authority of a county attorney to bring suit without authorization by the

commissioners court pursuant to Art. 339 has been upheld in several cases. *See Terrell v. Greene,* 88 Tex. 539, 31 S.W. 631 (1895); *J.R. Phillips Ins. Co. v. Road District Number 18,* 172 S.W.2d 707 (Tex.Civ. App.—Waco 1943, writ ref'd); *Hemphill County v. Adams,* 416 S.W.2d 855 (Tex. Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

Appellees contend these cases are distinguishable from the case at bar because in each of the cases it was undisputed that the expenditure of county funds had taken place and was improper. I see no distinction between a county attorney bringing a suit under Art. 339 to right a wrong and one brought to prevent a wrong.

Appellees contend the following cases stand for the proposition that the county attorney may not proceed under Art. 339: *Looscan v. County of Harris,* 58 Tex. 711 (1883); *Travis County v. Matthews,* 235 S.W.2d 691 (Tex.Civ.App.—Austin 1950, writ ref'd n.r.e.); and *County of Ward v. King,* 454 S.W.2d 239 (Tex.Civ.App.—El Paso 1970, writ dism'd). Each of those cases turned on the issue of whether the officer being sued was "entrusted with the collection or safe keeping of any public funds." Unquestionably, here, the county attorney has sued the county auditor and county treasurer, each of whom obviously falls within that class of county officers.

In light of the majority's holding, I believe the County Attorney of Harris County was authorized under Article 339 to bring this suit.

I also believe the County Attorney of Harris County has the requisite justiciable interest to attack the formation of the Harris County Toll Road Authority or the appointment of the operating board. I agree that generally, the county attorney has no authority to institute a proceeding for or *on behalf of the county,* unless that power is given by statute or orders of the commissioners court. However, Article 339 allows a county attorney to institute a proceeding *in his official capacity,* not for or *on behalf of the county.* Likewise, I believe a county attorney is permitted in his official capacity, without an order of the commissioners court, to institute a proceeding pursuant to the Uniform Declaratory Judgments Act. TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965).

The County Attorney of Harris County, in his official capacity, sought to have determined the questions of whether under Article 6795b–1, the commissioners court is granted the express authority to appoint itself as the governing board of the Harris County Toll Road Authority, and in that connection whether the county attorney is required to advise and act as counsel to such "operating board." Section 2 of Article 2524–1 provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX.REV.CIV.STAT.ANN. art. 2524–1, § 2 (Vernon 1965). County officials are permitted under this Act to have their legal duties determined. *Commissioners Court of Harris County v. Fullerton,* 596 S.W.2d 572 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

In this case, the county attorney raised several important issues with respect to his duties, if any, to the "Operating Board of the Harris County Toll Road Authority and/or the Harris County Toll Road Authority." I would hold the trial court erred in concluding the County Attorney of Harris County had no authority to seek an injunction or declaratory judgment with reference to the expenditure of county funds and lacked the requisite justiciable interest to attack either the formation of the Harris County Toll Road Authority or the appointment of the operating board.

ELLIS, J., joins in this concurrence.

J. CURTISS BROWN, Chief Justice, dissenting.

I respectfully dissent. The threshold question presented to this court is whether the commissioners court is authorized, pursuant to TEX.REV.CIV.STAT.ANN. art. 6795b–1 (Vernon 1960 and Supp.1984), to employ attorneys, along with other experts, to expedite the legal work necessary to further the project of toll road construction. The best argument in favor of this dissent is the language of the statute itself which is attached hereto as Appendix A.

This case proceeded to trial before the Honorable Tom Coleman, retired Chief Justice of the First Court of Appeals, acting as Presiding Judge of the 280th Judicial District Court. The court rendered judgment, denying appellant the relief sought. Upon request, Findings of Fact and Conclusions of Law were filed. Included in Judge Coleman's conclusions were the following:

12. Because the Harris County Toll Road Authority is a department of county government, Tex.Rev.Civ. Stat. art. 334 and Tex.Rev.Civ.Stat. Ann. art. 2372p are applicable to the issues involved in the above-entitled and numbered case so far as they are not in conflict with the provisions of art. 6795b–1.

13. Because Article 6795b–1 is the subsequently enacted general law, applicable only in the event a county toll road project is being developed, constructed, and operated, Article 6795b–1 constitutes an exception to any provision of Tex.Rev.Civ.Stat. Ann. art. 2372p where art. 6795b–1 and art. 2372p conflict.

14. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 specifically authorizes the Operating Board of the Harris County Toll Road Authority to employ private legal counsel to provide legal services in connection with the development, construction, operation and management of the Harris County Toll Road Authority.

16. Tex.Rev.Civ.Stat.Ann. art. 6795b–1 constitutes an exception to the provisions of art. 2372p which are in conflict with the provisions of art. 6795b–1.

It is appellant's contention that the commissioners court usurped the duties of the Harris County Attorney's office when it employed special counsel to provide legal services to the Harris County Toll Road Authority. He argues that these duties include the right of the Harris County Attorney to either appoint or veto the appointment of attorneys, even in connection with such special projects as toll roads, despite the fact the project may be unusually important to the county, requiring the services of specialized experts. He bases his argument primarily on the statutory provisions of TEX.REV.CIV.STAT.ANN. arts. 331h and 2372p.

Article 331h is a special statute which was adopted by the Legislature in 1953, creating the office of Harris County Attorney. The statute was enacted in response to a question posed to the Attorney General as to whether the Criminal District Attorney of Harris County (who then filled the role of appellant) had the duty to represent the Harris County Flood Control District. The Attorney General, in Opinion No. S–03 (1953), replied that the law did not impose upon the Criminal District Attorney of Harris County any duty to represent Harris County *generally* in civil matters; therefore, he had no duty to represent the Harris County Flood Control District. In response to this opinion, the legislature abolished the office of Harris County Criminal District Attorney and enacted Articles 331h and 326k. All civil duties previously handled by the Harris County Criminal District Attorney were transferred to the new office of Harris County Attorney and the criminal duties were transferred to the newly established district attorney's office. *See* TEX.REV.CIV.STAT.ANN. arts. 326k and 331h (Vernon 1973). Appellant seeks solace in the provisions of Article 331h, claiming that he has absolute and exclusive authority over the handling of all civil matters. I disagree. Section 3 of Article 331h provides:

It shall be the primary duty of the County Attorney of Harris County or his assistants to represent the State of Texas, Harris County and the officials of such county in *all civil matters pending before the courts of Harris County and any other courts where the State of Texas, Harris County and the officials of such county have matters pending.* It is understood that the County Attorney will represent the State of Texas, Harris County and the officials of such county in such *civil matters as is now required by law of Criminal District Attorneys, District Attorneys, and County Attorneys* with the exception that the County Attorney shall represent the Flood Control District of Harris County and perform any and all other duties imposed by this Act without any additional fee, compensation or perquisite other than that paid by Harris County out of its officers salary fund. (Emphasis supplied).

TEX.REV.CIV.STAT.ANN. art. 331h, § 3 (Vernon 1973). It seems clear from this language that the term, "all civil matters," as used above, created no new duties for the county attorney, but encompassed only those matters previously handled by the criminal district attorney, with the exception of representing the Harris County Flood Control District.

TEX.REV.CIV.STAT.ANN. art. 2372p (Vernon 1971), passed by the legislature in 1961, relates to employment of special counsel in counties of more than 500,000 population (including Harris County). This statute authorizes the commissioners court to employ special counsel to represent the county in suits brought by or against such county, and to render aid and work with the commissioners court, the county engineer, and other county employees in the preparation of documents necessary in the acquisition of rights-of-way for the county or in cases where the county is required to obtain the rights-of-way for state highways or to assist in the acquisition of such rights-of-way; to represent the county in all condemnation proceedings for the acquisition of rights-of-way for highways, and

other purposes where the right of eminent domain is given to counties. It is provided in such statute that where the counties have a county attorney, the special counsel shall be named by the county attorney and will be for such time and on such terms as the county attorney may deem proper and expedient, subject to the approval of the commissioners court.

Prior to the enactment of Article 2792p in 1961, Texas courts had recognized the power of a commissioners court to hire special counsel to represent the county in matters of unusual public importance. *Gibson v. Davis*, 236 S.W. 202 (Tex.Civ. App.—Galveston 1921, no writ); *Galveston County v. Gresham*, 220 S.W. 560 (Tex. Civ.App.—Galveston 1920, writ ref'd). Indeed, the commissioners court could hire special counsel to assist the county attorney in discharging his statutory duties. *Terrell v. Greene*, 88 Tex. 539, 31 S.W. 631 (1895); *Seagler v. Adams*, 238 S.W. 707 (Tex.Civ.App.—Galveston 1922), *aff'd.*, 112 Tex. 583, 250 S.W. 413 (1923). However, in *Terrell*, 31 S.W. at 633, the supreme court held that a commissioners court was *not* authorized to hire special counsel to represent the county in routine matters where the county attorney had a statutory duty to act.

While there is no legislative history available to assist in explaining the enactment of Article 2372p, I find appellees' explanation a reasonable one. At the time Article 2792p was enacted, a commissioners court was already empowered to (1) hire special counsel to handle any extraordinary matters without approval from the county attorney; and (2) hire special counsel to assist the county attorney in routine matters. Thus, it seems logical that the legislature, in enacting Article 2792p, chose to grant commissioners court a power it did not already have, i.e. to appoint special counsel *to handle routine matters,* despite the fact such matters might fall within the statutory duties of the county attorney. Following this line of reasoning, it is clear that while it is incumbent upon a commissioners court to consult the County Attor-

ney with regard to hiring special counsel for routine matters, no such procedure need be followed in matters which fall outside the parameter of the routine or ordinary, as in the case before us.

TEX.REV.CIV.STAT.ANN. art. 6795b–1 (Vernon 1960 and Supp.1984) is a comprehensive statute authorizing the commissioners court to plan, construct, operate and maintain toll road projects in Harris County (and eight other coastal counties), as well as similar projects affecting the transportation needs of those counties. It sets up a plan for the development, financing, construction and operation of toll roads in this County. Section 1 provides that the "cost of the project" may include "the payment of *all* legal, fiscal and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the bonds." Section 5b authorizes the commissioners court to appoint an operating board if needed, if it feels a project could be "developed, constructed, operated, and managed better and more efficiently" by such a board. It further authorizes the operating board to exercise the same power and authority the commissioners court may exercise in regard to the development, construction, operation, and management of a project. However, the board is subject to such limitations and restrictions as may be prescribed by the commissioners court. This power and authority includes the right to "employ ... consultants, *attorneys*, engineers, financial advisors, agents and other employees or contractors in connection with the development, construction, operation, and management of the project." [1]

Article 6795b–1 is an explicit, detailed and unambiguous statute, the purpose and object of which is to allow certain counties to construct toll roads and similar projects affecting the transportation needs of those

counties included in the act. In *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983), our supreme court stated that if a statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate and the statute should be given its common everyday meaning (citing *Ex parte Roloff,* 510 S.W.2d 913 (Tex.1974) and *Banks v. Chicago Grain Trimmers Assoc.*, 390 U.S. 459, 465, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30 (1968)). Since no limitations were placed by the legislature on the powers granted by Article 6795b–1, this court may not impose any conditions on the exercise of those powers. *See Baird v. Sam Houston Electric Coops., Inc.*, 627 S.W.2d 734 (Tex.App.—Houston [1st Dist.] 1981, writ dism'd).

A fair reading of Article 6795b–1 demonstrates that the legislature did not envision involvement of the County Attorney, *in any manner*, with the development, construction, and operation of the toll road project. Such a project to be successful, must have competent engineers, attorneys, and other experts to speedily deal with the project at hand so as to implement every aspect of this most important work. The evidence fully supports the conclusion that the expedition of the building of the toll roads is essential to deal with the problem of traffic congestion in Harris County. The Legislature has not seen fit to give the County Attorney any management role in such projects.

JUNELL and SEARS, JJ., join in this dissent.

### APPENDIX A

**Art. 6795b–1. Causeways, bridges, and tunnels authorized in Gulf Coast counties of 50,000 or more**

**Construction and operation authorized; cost and expenses**

Section 1. Any county in the State of Texas which borders on the Gulf of Mexico

---

1. Whether or not the commissioners court was empowered to appoint *itself* as Operating Board is irrelevant to the disposition of this case. Article 6795b–1 expressly authorizes the commissioners court to manage the project in its capac-

ity as a court. While the court would be no more efficient acting as an "Operating Board," I see no harm in the commissioners court's action which would affect the outcome of this case.

and which has a population of fifty thousand (50,000) or more, according to the last Federal Census preceding the authorization of bonds hereunder, acting through its Commissioners Court, is hereby authorized and empowered to construct, acquire, improve, operate and maintain a causeway, bridge, tunnel, or any combination of such facilities, including all necessary approaches, fixtures, accessories, and equipment (all of which are hereinafter referred to as "the project") from one (1) point in said county to another, or from one (1) point in said county to a point in another county (regardless of the population of such other county), in, over, through or under the waters of the Gulf of Mexico or any bay or inlet opening thereinto, and to issue its revenue bonds payable solely from the revenues to be derived from the operation thereof, to pay the cost of such construction, acquisition, or improvement. Among other things, the cost of the project may include the following: the cost of construction; the cost of all property, real, personal, and mixed, and all appurtenances, easements, contracts, franchises, pavements, and properties of every nature, used or useful in connection with the construction, acquisition, improvement, operation, and maintenance of the project; the payment of the cost of condemning any such property, including both the payment of the award and the payment of the court costs and attorneys fees; the payment of all legal, fiscal, and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the revenue bonds; and the payment of interest on the bonds prior to and during the period occupied by the construction of the project and for one (1) year thereafter. If the Commissioners Court shall consider it desirable to acquire, through purchase or lease, existing ferry properties for the purpose of operating such properties during the period of construction, over the route to be traversed by the project, such properties may be so acquired and the cost thereof

paid from the proceeds of the bonds. Any preliminary expenses paid from county funds shall be repaid to such funds from the proceeds of the bonds when available, and all engineering and fiscal contracts and agreements for such projects heretofore entered into are hereby validated and confirmed. Where any causeway, bridge, tunnel, or combination thereof constructed or acquired and financed hereunder extends from a point in the county issuing the bonds to a point in another county, it may be so constructed or acquired only after there shall have been adopted by the Commissioners Court of the county not issuing the bonds, a resolution approving and consenting to such construction or acquisition, and the Commissioners Court of any such county is hereby authorized to adopt such resolution. So long as and to the extent that the project, or part thereof, has not been designated as part of the State Highway System, that part of the project (which has not been so designated) in each county shall be considered a part of the county road system of such county, and all laws relating to the maintenance of county roads are hereby made applicable to any project constructed or acquired hereunder in so far as they do not conflict with the provisions hereof; and each county into which the project extends may acquire necessary lands or right of ways or other property by purchase, condemnation or otherwise, under the General Laws of Texas, and the county issuing the bonds shall have such powers with respect to necessary lands or right of ways or other property in each county into which the project extends; provided that provision for the payment of the purchase price, award, or other costs may be upon such terms as may be agreed upon by the Commissioners Courts of the county issuing the bonds and the other county, and the proceeds of the bonds issued hereunder may be used for such purposes; and provided, further, that no election shall be necessary to authorize the issuance of any bonds issued hereunder payable solely from revenues, but in case no election is held, notice of intention to issue such bonds shall be given as provided in Sections 2 and

3 of the Bond and Warrant Law of 1931, as amended, and the authority to issue such bonds shall be subject to the right of referendum provided in Section 4 of said Law. Bonds authorized to be issued under this law shall not be sold initially for less than par and accrued interest. No funds raised or to be raised by taxation in any county shall be expended on any such project extending between two (2) counties unless the Commissioners Court of such county is authorized to expend such funds by a vote of the electors qualified to vote at an election called by the Commissioners Court for such purpose. Notice of such election shall be published once a week for two (2) consecutive weeks in a newspaper of general circulation in said county, the first publication to be not less than fifteen (15) days prior to the date of said election. As amended Acts 1955, 54th Leg., p. 1163, ch. 446, § 1.

**Bonds; charge only on revenues of projects; approval and registration; alternative methods; elections**

Sec. 2. Except as expressly provided in this Section, no bonds authorized hereunder shall ever be a debt of the county issuing them, but shall be solely a charge upon the revenues of the project and shall never be reckoned in determining the powers of the county to issue any bonds for any purpose authorized by law. Each such bond shall contain this clause: "The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation." Bonds issued hereunder may be presented to the Attorney General for his approval in the same manner and with like effect as is provided for the approval of tax bonds issued by counties. In such case the bonds shall be registered by the State Comptroller as in the case of other county bonds. But notwithstanding any limitations in this Act or in the law which it amends, any county proceeding hereunder after this amendatory Act becomes effective may issue bonds for such purpose secured by any one of the following methods:

(a) Solely by the pledge of revenues as prescribed hereinabove in this Section and elsewhere in Chapter 304, Acts of the Regular Session of the Fiftieth Legislature[1]; or

(b) A pledge of and payable from either an ad valorem tax levied out of the Road and Bridge Fund Tax authorized for counties under Article 8, Section 9 of the Constitution, or an unlimited ad valorem tax authorized under Article 3, Section 52 of the Constitution and laws enacted pursuant thereto; or

(c) A designated part of the bonds to be secured solely by a pledge of revenues as provided under sub-section (a) and a designated part of the bonds to be secured by pledges of such ad valorem tax as provided under sub-section (b) of this Section; or

(d) A combination of the methods prescribed under sub-sections (a) and (b) wherein all of the bonds are to be supported and secured by such ad valorem tax with the duty imposed on the County to collect tolls for use of the facilities so long as any of the bonds are outstanding so that in the manner to be prescribed in the bond resolution or the trust indenture the amount of the tax to be collected from time to time may be reduced or abated to the extent that the revenues from the operation of the facilities are sufficient to meet the requirements for operation and maintenance and to provide funds for the bonds as prescribed in the indenture.

But no such bonds wholly or partially supported by an ad valorem tax shall be issued unless and until they shall have been authorized at an election at which the question of their issuance shall have been submitted. If the bonds are to be supported by a limited ad valorem tax they must have been authorized by not less than a majority vote at an election called and held substantially in the manner prescribed for the issuance of county bonds in Chapter 1 of Title 22 of the Revised Civil Statutes of Texas as amended. If the bonds are to be supported by an unlimited tax they must have been authorized by not less than a two-thirds majority vote at an election called and held substantially in the manner prescribed for the issuance of unlimited tax county road bonds in Chapter 3 of Title 22

of the Revised Civil Statutes of Texas, as amended. As amended Acts 1949, 51st Leg., p. 219, ch. 122, § 2.

[1] Foll. art. 8197f.

### Federal or state aid; contracts; acquisition of property

Sec. 3. Any county proceeding hereunder may accept any loan, gift, or grant from the United States of America or the State of Texas, or any agency or instrumentality thereof, and may enter into any agreement or agreements not prohibited by the Constitution which may be necessary to obtain such loan, grant, or gift. Construction contracts may be awarded with or without advertised notice for bids in such manner as may be deemed advisable by the Commissioners Court. Such county may enter on any lands, waters, and premises for the purpose of making surveys, soundings, and examinations, and if considered advisable may exercise the right of eminent domain and may institute condemnation proceedings under the provisions of any pertinent General Law of Texas for the purpose of acquiring any property to be used or useful in connection with the project. In any condemnation suit the Court having jurisdiction may make such orders as may be just to the county and to the owners of the property to be condemned. Upon the institution of any such condemnation proceedings and upon tender of a bond or other security in sufficient sum to secure the owner or owners for damages and upon approval of such bond or other security by the Court, the county shall have the right to immediate possession of the property which is the subject matter of the condemnation proceedings and may enter thereon. The State of Texas hereby expressly grants to any such county full easements and right of ways through, across, under, and over any lands or property owned by the State which may be necessary or convenient to the construction, acquisition or efficient operation of the project.

### Bonds; tolls; trust indenture

Sec. 4. The bonds issued hereunder may be authorized by resolution at one time or from time to time. Such bonds shall be payable solely from the revenues to be derived from the operation of the project and it shall be the mandatory duty of the county to impose such tolls and charges for use of the project as will be fully sufficient to operate and maintain the project, pay principal of and interest on the bonds when due and establish such reserve therefor as may be provided, and establish an adequate fund for depreciation and replacement. The Commissioners Court shall have full discretion in fixing the details of the bonds and in determining the manner of sale thereof, provided that the bonds shall not run more than forty (40) years from their date, and that the interest rate and sale price shall be such that the interest cost of the bonds shall not exceed six per cent (6%) per annum, computed on average maturities according to standard tables of bond values. The bonds may be redeemable prior to maturity in such manner and at such prices as may be determined by the Commissioners Court prior to the issuance of the bonds. All bonds issued hereunder shall and are hereby declared to have all of the qualifications and incidents of negotiable instruments under the Negotiable Instruments Law of Texas.[1] Provision may be made for registration of such bonds as to principal or interest or both. The proceeds of the bonds shall be used solely to pay the cost of the project as above defined, and shall be disbursed under such restrictions as may be provided in the bond resolution or trust indenture hereinafter mentioned, and there shall be and is hereby created and granted a lien upon such moneys until so applied in favor of the holders of the bonds or any trustee provided for in respect of such bonds. Unless otherwise provided in such resolution or indenture, if the proceeds of the bonds prove insufficient to pay the cost of the project, additional bonds may be issued to the amount of the deficit and shall be deemed to be of the same issue and entitled to payment from the same fund without preference or priority of the bonds first issued. Any surplus remaining from bond proceeds after the cost of the project has been paid in full shall be used in paying

interest on and retiring bonds. Prior to the issuance of definitive bonds, temporary or interim bonds, with or without coupons, exchangeable for definitive bonds may be issued. Such bonds may be authorized and issued without any proceedings or the happening of any conditions or things or the publication of any proceedings or notices other than those specifically specified and required by this Act, and may be authorized and issued without regard to the requirements, restrictions, or procedural provisions contained in any other law. The resolution authorizing the bonds may provide that such bonds shall contain a recital that they are issued pursuant to this Act and such recital shall be conclusive evidence of their validity and the regularity of their issuance.

If so provided by the Commissioners Court, the bonds may be secured by a trust indenture by and between the county and a corporate trustee, which may be any trust company or bank having the powers of a trust company within or outside of the State of Texas. Such trust indenture may pledge or assign tolls and revenues but shall not convey or mortgage the project itself or any part thereof. Either the resolution providing for the issuance of the bonds or such trust indenture may contain such provisions for protecting and enforcing the rights and remedies of the bondholders as may be reasonable and proper and not in violation of law, including covenants setting forth the duties of the county in relation to the acquisition of properties and the construction, maintenance, operation, repair, and insurance of the project, and the custody, safeguarding, and application of all moneys. It shall be lawful for any bank or trust company in this State to act as depository of the proceeds of the bonds or revenues derived from the operation of the project and to furnish such indemnity bonds or to pledge such securities as may be required by the county. Such bond resolution or indenture may set forth the rights and remedies of the bondholders and of the trustee and may restrict the individual rights of action of the bondholders. In addition to the foregoing, such bond resolution or trust indenture may contain such other provisions as the Commissioners Court may deem reasonable and proper for the security of the bondholders including, but without limitation, covenants prescribing all happenings or occurrences which constitute events of default and the terms and conditions upon which any or all of the bonds shall become or may be declared to be due before maturity and as to the rights, liabilities, powers and duties arising upon the breach by the county of any of its duties or obligations.

1 Articles 5932–5948.

### Rights of bondholders or trustee for bondholders; receiver

Sec. 5. Any holder or holders of bonds issued hereunder, including a trustee or trustees for such holders, shall have the right in addition to all other rights by mandamus or other proceeding in any Court of competent jurisdiction to enforce his or their rights against the county and its employees and against any board which may be created to operate the project and against the agents and employees thereof, including, but not limited to, the right to require the county and such board to impose and collect sufficient tolls and charges to carry out the agreements contained in the bond resolution or trust indenture and to perform all agreements and covenants therein contained and duties arising therefrom, and to apply for and obtain the appointment of a receiver for the project. If such receiver be appointed, he may enter and take possession of the project and maintain the project and collect and receive all revenues and tolls arising therefrom in the same manner as the county itself might do and shall dispose of such moneys and apply same in accordance with the obligations of the county under the bond resolution or trust indenture and as the Court may direct.

### Contract or lease agreement

Sec. 5a. Any county proceeding hereunder after this amendment becomes effective may, within the discretion of the Commissioners Court, to the extent prescribed

by the bond resolution or the trust indenture or pursuant to the provisions thereof make a contract or lease agreement under which the facilities may be operated for a period fixed therein not extending beyond the date of the maturity of the last maturing bond, by another agency, person, firm, or corporation, provided that nothing in such contract or lease shall be so interpreted as to interfere with the right of the holders of the bonds or their representatives to require proper operation and maintenance of the facilities and the payments for the benefit of the bonds as prescribed in the bond resolution or in the trust indenture. Added Acts 1949, 51st Leg., p. 219, ch. 122, § 3.

### Bonds free from taxation

Sec. 6. The accomplishment of the purposes stated in this Act being for the benefit of the people of this State and for the improvement of their commerce and property, the county in carrying out the purposes of this Act will be performing an essential governmental function and shall not be required to pay any tax or assessment on the project or any part thereof, and the bonds issued hereunder and their transfer and the income therefrom, including any profits made on the sale thereof, shall at all times be free from taxation within this State.

### Powers of counties and of State Highway Commission

Sec. 7. The powers herein granted may be carried out by such counties and the projects may be acquired and operated and tolls and charges fixed and maintained without the consent, approval, supervision or regulation of any commission, department, bureau, agency, or officer of the State of Texas, provided, however, that nothing in this Section shall be construed to prevent the State Highway Commission from operating and maintaining the project or contributing to the cost of such operation and maintenance under such provisions as may be agreed to by the county which are not inconsistent with the rights of bondholders or the rights of any agency, person, firm or corporation then operating

the project under lease or contract with the county. The State Highway Commission shall have authority without further legislative enactment to make such provision for and contributions toward operation and maintenance of the project as it may see fit, and to lease the project under such terms not inconsistent with the provisions of the bond resolution or trust indenture as may be agreed upon with the county, and to declare the project or any part thereof to be a part of the State Highway System and to operate the project or such part thereof as a part of the State Highway System, provided, however, that such declaration may be made and such operation undertaken only to the extent that property and contract rights in the project and in the bonds are not unfavorably affected thereby. When all of the bonds and interest thereon shall have been paid, or a sufficient amount for the payment of all bonds and the interest thereon to maturity shall have been set aside in a trust fund for the benefit of the bondholders and shall continue to be held for that purpose, the project shall become a part of the State Highway System and shall be maintained by the State Highway Commission, free of tolls. As amended Acts 1949, 51st Leg., p. 219, ch. 122, § 4.

### Contributions by United States or by state

Sec. 7(a). The county is hereby authorized to accept from the United States Government or any of its departments or agencies or from the State of Texas or any of its departments or agencies, any contributions or assistance available from such source or sources in connection with the acquisition, construction and operation of such project and to enter into agreements with one or any of them in reference to the acquisition, construction and operation of the project. Added Acts 1949, 51st Leg., p. 219, ch. 122, § 5.

### Bonds as legal investments or security

Sec. 7(b). All bonds issued under this law before and after this amendment shall be and are hereby declared to be legal and authorized investments for banks, savings

banks, trust companies, building and loan associations, savings and loan associations, insurance companies, fiduciaries, trustees, guardians, and for the sinking funds of cities, towns, villages, counties, school districts, or other political corporations or subdivisions of the State of Texas. Such bonds shall be eligible to secure the deposit of any and all public funds of the State of Texas, and any and all public funds of cities, towns, villages, counties, school districts, or other political corporations or subdivisions of the State of Texas; and such bonds shall be lawful and sufficient security for said deposits to the extent of their value, when accompanied by all unmatured coupons appurtenant thereto. Added Acts 1949, 51st Leg., p. 219, ch. 122, § 5.

### Refunding bonds

Sec. 8. Subject to any restrictions which may appear in the aforesaid trust indenture or bond resolution, the Commissioners Court may by resolution provide for the issuance of bonds for the purpose of refunding any bonds issued under this Act and at the time outstanding. The issuance of such refunding bonds, the maturities and other terms thereof, the rights of the holders thereof, and the duties of the county in respect to the same, shall be governed by the foregoing provisions of this Act in so far as the same may be applicable, but no such refunding bonds shall be delivered unless delivered in exchange for the bonds authorized to be refunded thereby or unless sold and delivered to provide funds for the payment of matured or redeemable bonds maturing or redeemable within three (3) months.

### Partial invalidity

Sec. 9. If any clause, sentence, paragraph, or part of this Act shall for any reason be adjudged by any Court of competent jurisdiction to be invalid or ineffective, such judgment shall not affect, impair, or invalidate the remainder of this Act, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment has been rendered. Acts 1947, 50th Leg., p. 514, ch. 304.

**Art. 6795b. Causeways, bridges, and tunnels authorized in Gulf Coast counties of 20,000 or more**

### Cross References

Bond issue to refund outstanding causeway revenue bonds, see art. 795a.

**Art. 6795b–1. Causeways, bridges, tunnels, turnpikes, or highways authorized in Gulf Coast counties of 50,000 or more**

### Construction and operation authorized; cost and expenses

Section 1. Any county in the State of Texas which borders on the Gulf of Mexico or any bay or inlet opening thereinto and which has a population of fifty thousand (50,000) or more, according to the last Federal Census preceding the authorization of bonds hereunder, acting through its Commissioners Court, is hereby authorized and empowered to construct, acquire, improve, operate and maintain a causeway, bridge, tunnel, turnpike, highway, or any combination of such facilities, including all necessary overpasses, underpasses, interchanges, entrance plazas, toll houses, service stations, approaches, fixtures, accessories, equipment, and administration, storage, and other necessary buildings, together with all property rights, easements, and interests acquired in connection therewith (all of which are hereinafter referred to as "the project") from one (1) point in said county to another, or from one (1) point in said county to a point in another county (regardless of the population of such other county), and to issue its tax bonds, revenue bonds, or combination tax and revenue bonds, to pay the cost of such construction, acquisition, or improvement. Among other things, the cost of the project may include the following: the cost of construction; the cost of all property, real, personal, and mixed, and all appurtenances, easements, contracts, franchises, pavements, and properties of every nature, used or useful in connection with the construction, acquisition, improvement, operation, and maintenance of the project; the payment of the

cost of condemning any such property, including both the payment of the award and the payment of the court costs and attorneys fees; the payment of all legal, fiscal, and engineering expenses incurred in connection with the acquisition and construction of the project and the making of preliminary surveys and investigations and the authorization and issuance of the bonds; and the payment of interest on the bonds and operating expenses on the project prior to and during the period occupied by the construction of the project and for one (1) year thereafter. If the Commissioners Court shall consider it desirable to acquire, through purchase or lease, existing ferry properties for the purpose of operating such properties during the period of construction, over the route to be traversed by the project, such properties may be so acquired and the cost thereof paid from the proceeds of the bonds. Any preliminary expenses paid from county funds shall be repaid to such funds from the proceeds of the bonds when available, and all engineering and fiscal contracts and agreements for such projects heretofore entered into are hereby validated and confirmed. Where any causeway, bridge, tunnel, turnpike, highway, or combination thereof constructed or acquired and financed hereunder extends from a point in the county issuing the bonds to a point in another county, it may be so constructed or acquired only after there shall have been adopted by the Commissioners Court of the county not issuing the bonds, a resolution approving and consenting to such construction or acquisition, and the Commissioners Court of any such county is hereby authorized to adopt such resolution. So long as and to the extent that the project, or part thereof, has not been designated as part of the State Highway System and is not considered a Turnpike Project, as defined in Chapter 410, Acts of the Fifty-Third Legislature, 1953, as amended,[1] that part of the project (which has not been so designated and is not so considered) in each county shall be considered a part of the county road system of such county, and all laws relating to the maintenance and operation of county

roads are hereby made applicable to any project constructed or acquired hereunder in so far as they do not conflict with the provisions hereof; and each county into which the project extends may acquire necessary lands or right of ways or other property by purchase, condemnation or otherwise, under the General Laws of Texas, and the county issuing the bonds shall have such powers with respect to necessary lands or right of ways or other property in each county into which the project extends; provided that provision for the payment of the purchase price, award, or other costs may be upon such terms as may be agreed upon by the Commissioners Courts of the county issuing the bonds and the other county, and the proceeds of the bonds issued hereunder may be used for such purposes; and provided, further, that no election shall be necessary to authorize the issuance of any bonds issued hereunder payable solely from revenues, but in case no election is held, notice of intention to issue such bonds shall be given as provided in Sections 2 and 3 of the Bond and Warrant Law of 1931, as amended,[2] and the authority to issue such bonds shall be subject to the right of referendum provided in Section 4 of said Law. Bonds authorized to be issued under this law shall be sold in such manner, either at public or private sale, and for such price as the Commissioners Court of the county issuing the bonds may determine to be for the best interests of the county.

Sec. 1 amended by Acts 1977, 65th Leg., p. 2160, ch. 861, § 1, eff. Aug. 29, 1977.

[1] Article 6674v.

[2] Article 2368a.

### Bonds; charge only on revenues of project; approval and registration; alternative methods

Sec. 2. No bonds authorized pursuant to Subsection (a) of this section shall ever be a debt of the county issuing them, but shall be solely a charge upon the revenues of the project and shall never be reckoned in determining the powers of the county to issue any bonds, payable in whole or in part from taxes, for any purpose authoriz-

ed by law. Each such bond payable solely from the revenues of a project shall contain this clause: "The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation." All bonds issued hereunder may be presented to the Attorney General for his approval in the same manner and with like effect as is provided for the approval of tax bonds issued by counties. In such case the bonds shall be registered by the State Comptroller as in the case of other county bonds. But notwithstanding any limitations in this Act or in the law which it amends, any county proceeding hereunder after this amendatory Act becomes effective may issue bonds for such purpose secured by any one of the following methods:

(a) Solely by the pledge of revenues as prescribed hereinabove in this Section and elsewhere in Chapter 304, Acts of the Regular Session of the Fiftieth Legislature, as amended;[1] or

(b) A pledge of and payable from either an ad valorem tax levied under Article 8, Section 9 of the Constitution, or an unlimited ad valorem tax authorized under Article 3, Section 52 of the Constitution and laws enacted pursuant thereto; or

(c) A designated part of the bonds to be secured solely by a pledge of revenues as provided under sub-section (a) and a designated part of the bonds to be secured by pledges of such ad valorem tax as provided under sub-section (b) of this Section; or

(d) A combination of the methods prescribed under sub-sections (a) and (b) wherein all of the bonds are to be supported and secured by such ad valorem tax with the duty imposed on the County to collect tolls for use of the facilities so long as any of the bonds are outstanding so that in the manner to be prescribed in the bond resolution or the trust indenture the amount of the tax to be collected from time to time may be reduced or abated to the extent that the revenues from the operation of the facilities are sufficient to meet the requirements for operation and mainte-

nance and to provide funds for the bonds as prescribed in the indenture.

But no such bonds wholly or partially supported by an ad valorem tax shall be issued unless and until they shall have been authorized at an election at which the question of their issuance shall have been submitted.

Sec. 2 amended by Acts 1977, 65th Leg., p. 2162, ch. 861, § 2, eff. Aug. 29, 1977.

[1] This article.

### Pooled projects

Sec. 2a. Any two or more projects constructed by a county proceeding hereunder may, upon the adoption of a resolution approving the same, duly passed by the Commissioners Court, be pooled and designated as a "pooled project." Any existing project or projects may be pooled in whole or in part with any new project or projects thereof. After being so designated, such "pooled project" shall become a "project" as used in Chapter 304, Acts of the Regular Session of the Fiftieth Legislature, 1947, as amended.[1] No project may be pooled more than once. Consistent with the resolution or order providing for the issuance of the bonds or the trust indenture securing the same, the resolution of the Commissioners Court shall set a date certain when each of the projects being authorized to be pooled shall be available for the free use of the public. Subject to the terms of any such bond resolution or trust indenture, any county proceeding hereunder is authorized to issue from time to time bonds of the county as hereinbefore authorized, including bonds which are payable either in whole or in part from the revenues of a pooled project, for the purpose of (i) paying all or any part of the cost of such pooled project or the cost of any part of such pooled project, (ii) paying the costs of constructing improvements, extensions, or enlargements to all or any part of any pooled project, or (iii) refunding any bonds then outstanding issued on account of any pooled project or any part of any pooled project, including the payment of any redemption premium thereon and any interest accrued or to accrue to the date of

redemption of such bonds, and, if deemed advisable by the Commissioners Court, paying the costs of constructing improvements, extensions, and enlargements to the pooled project or to any part of any pooled project in connection with which or in connection with any part of which bonds to be refunded shall have been issued. Revenues of all or any part of such pooled project may be pledged to the payment of such bonds. Improvements, extensions, or enlargements to be paid from refunding bonds issued hereunder are not restricted to and need not be constructed on any particular part of a pooled project in connection with which bonds to be refunded may have been issued but may be constructed in whole or in part on other parts of the pooled project not covered by the bonds to be refunded. Within the discretion of the issuing county, refunding bonds issued hereunder may be issued in exchange for outstanding bonds or may be sold and the proceeds used for the purpose of redeeming outstanding bonds. Any county having previously designated a "pooled project" may from time to time, subject to the terms of any bond resolution or trust indenture, add to, delete from, or otherwise amend the extent or component parts of any pooled project, which pooled project as so amended shall be and become a project as used in Chapter 304, Acts of the Regular Session of the Fiftieth Legislature, Regular Session, 1947, as amended. Sec. 2a added by Acts 1977, 65th Leg., p. 2163, ch. 861, § 3, eff. Aug. 29, 1977.

 1 This article.

\* \* \* \* \* \*

### Contract or agreement for project construction, acquisition, etc.; project feasibility studies and surveys

Sec. 3a. Notwithstanding anything contained herein to the contrary, any county proceeding hereunder may contract or agree with any other county, city, village, town, special district, or any other legally constituted political subdivision or agency of the State of Texas, or any combination of these, to construct, acquire, improve, operate, and maintain a project. Any such contract or agreement may provide for joint ownership of the project or for title to the project to be in any one of the contracting parties. In addition, any contracting county proceeding hereunder may issue its bonds, as authorized herein, for the purpose of paying all or any part of the cost of a project which said county is obligated to pay under any such contract or agreement. Any contract or agreement entered into under this section may contain any terms and extend for any period of time to which the parties can agree, and may provide that it will continue in effect until bonds specified in it and refunding bonds issued in lieu of those bonds are paid. If any such contract or agreement so provides, payments made thereunder shall be operating and maintenance expenses of the project, and the revenues derived from operation of such project may be pledged to such payment.

If on the effective date of this amendment any agency of the State of Texas has expended funds in the amount of $75,000 or more for the purpose of conducting studies and surveys or making other investigations for the purpose of determining the feasibility and practicability of constructing a toll project, a county proceeding hereunder may not; without the consent of such state agency, assume sole responsibility for the construction, acquisition, improvement, operation, and maintenance of the project and thereby exclusively preempt the state agency from constructing such project; provided, however, that the foregoing restriction set forth in this sentence shall not apply to any county proceeding hereunder if such county has given the state agency written notice by certified mail of its intention to proceed with construction, acquisition, improvement, operation, and maintenance of the project and the state agency has failed or refused for any reason within six months from the date of such notice to issue its bonds in the amount required to pay the cost of the project.

Sec. 3a added by Acts 1977, 65th Leg., p. 2164, ch. 861, § 4, eff. Aug. 29, 1977.

### Bonds; tolls; ad valorem tax; trust indenture

Sec. 4. The bonds issued hereunder may be authorized by resolution or order at one time or from time to time. Bonds payable from gross or net revenues may be authorized by and issued under a resolution or order of the Commissioners Court of the county issuing the bonds, and no other authorization or approval is required. However, the bonds may be presented to the Attorney General as provided by Section 2 of this article. If such bonds are payable in whole or in part from the revenues to be derived from the operation of the project, it shall be the mandatory duty of the county, which duty may be executed by an operating board appointed pursuant to Section 5b hereof, to impose such tolls and charges for the use of the project as will be fully sufficient, when taken with any other funds or revenues available for such purposes, including ad valorem taxes, to pay the maintenance and operating expenses of the project, to pay the principal of and premium, if any, and interest on the bonds when due, to establish such reserve therefor as may be provided, and to establish an adequate fund for depreciation and replacement. However, in connection with the issuance of bonds described in Subsection (a) of Section 2 of this article, the county may authorize, in the bond resolution or order, the payment of the principal of and premium, if any, and interest on the bonds from the gross revenues of the project, and the county may levy and pledge to the payment of maintenance and operating expenses of the project and to the establishment and maintenance of a reserve fund and a depreciation and replacement fund for the project, either as a supplement to the pledge of revenues for those purposes or in lieu of a pledge of revenues, a direct continuing ad valorem tax under Article VIII, Section 9, as amended, or Article III, Section 52, as amended, of the Texas Constitution and the laws enacted under those provisions, as may be provided in the resolution or order authorizing issuance of the bonds. The proceeds of a tax pledged under this section shall be utilized annually to the extent required by the resolution or order for such purposes, and the county may provide in the resolution or order that certain costs listed in the resolution or order or all of such costs will be paid by the county from the proceeds of the tax. As to such bonds which are payable either in whole or in part from the revenues to be derived from the operation of a project, the operating and maintenance expenses of the project shall include only such items as are set forth and defined in the proceedings authorizing the issuance of such bonds. The Commissioners Court shall have full discretion in fixing the details of the bonds authorized to be issued hereunder and in determining the manner of sale thereof, provided that the bonds, whether term, serial, or combination thereof, shall mature not more than forty (40) years from their date. The bonds may contain such mandatory or optional redemption provisions and may mature in such manner and at such prices as may be determined by the Commissioners Court prior to the issuance of the bonds. All bonds issued hereunder, and any interest coupons pertaining to the bonds, on delivery shall be considered and construed to be "securities" within the meaning of Chapter 8, Business & Commerce Code, and the bonds are negotiable if they are issued in accordance with this Act. Provision may be made for registration of such bonds as to principal or interest or both. The proceeds of the bonds shall be used solely to pay the cost of the project as above defined, and shall be disbursed under such restrictions as may be provided in the bond resolution, order, or trust indenture hereinafter mentioned, and there shall be and is hereby created and granted a lien upon such moneys until so applied in favor of the holders of the bonds or any trustee provided for in respect of such bonds. Unless otherwise provided in such resolution, order, or indenture, if the proceeds of the bonds prove insufficient to pay the cost of the project, additional bonds may be issued to the amount of the deficit and shall be deemed to be of the same issue and entitled to payment from the same fund without

preference or priority of the bonds first issued. Any surplus remaining from bond proceeds after the cost of the project has been paid in full shall be used in paying interest on and retiring bonds unless otherwise provided in the bond resolution, order, or trust indenture. Prior to the issuance of definitive bonds, interim bonds, with or without coupons, exchangeable for definitive bonds may be issued. Such bonds may be authorized and issued without any proceedings or the happening of any conditions or things or the publication of any proceedings or notices other than those specifically specified and required by this Act, and may be authorized and issued without regard to the requirements, restrictions, or procedural provisions contained in any other law. The resolution or order authorizing the bonds may provide that such bonds shall contain a recital that they are issued pursuant to this Act and such recital shall be conclusive evidence of their validity and the regularity of their issuance.

If so provided by the Commissioners Court, the bonds may be secured by a trust indenture by and between the county and a corporate trustee, which may be any trust company or bank having the powers of a trust company within or outside of the State of Texas. Such trust indenture may pledge or assign tolls and revenues but shall not convey or mortgage the project itself or any part thereof. Either the resolution or order providing for the issuance of the bonds or such trust indenture may contain such provisions for protecting and enforcing the rights and remedies of the bondholders as may be reasonable and proper and not in violation of law, including covenants setting forth the duties of the county in relation to the acquisition of properties and the construction, maintenance, operation, repair, and insurance of the project, and the custody, safeguarding, and application of all moneys. It shall be lawful for any bank or trust company in this State to act as depository of the proceeds of the bonds or revenues derived from the operation of the project and to furnish such indemnity bonds or to pledge such securities as may be required by the county. Such bond resolution, order, or indenture may set forth the rights and remedies of the bondholders and of the trustee and may restrict the individual rights of action of the bondholders. In addition to the foregoing, such bond resolution, order, or trust indenture may contain such other provisions as the Commissioners Court may deem reasonable and proper for the security of the bondholders including, but without limitation, covenants prescribing all happenings or occurrences which constitute events of default and the terms and conditions upon which any or all of the bonds shall become or may be declared to be due before maturity and as to the rights, liabilities, powers and duties arising upon the breach by the county of any of its duties or obligations.

Sec. 4 amended by Acts 1977, 65th Leg., p. 2164, ch. 861, § 5, eff. Aug. 29, 1977; Acts 1983, 68th Leg., p. 4041, ch. 630, § 1, eff. Aug. 29, 1983.

### Use of county property; conveyances; reconstruction of closed or relocated nontoll roads, streets, or highways

Sec. 4a. Notwithstanding any other provision of law, the commissioners court may use any county land, rights-of-way, or other property, regardless of when or how the property is acquired, for the purposes of a project under this Act. The governing body of each political subdivision or agency of this state, without any form of advertisement, may convey title or right and easements to any property needed by a county for a project under this Act. If the county shall find it necessary to close or change the location of any portion of any nontoll road, street, or highway, it shall cause the nontoll road, street, or highway to be reconstructed at such a location and in such a fashion as the county shall determine will provide substantially the same access as the nontoll road, street, or highway being closed or relocated.

Sec. 4a added by Acts 1983, 68th Leg., p. 4045, ch. 630, § 2, eff. Aug. 29, 1983.

### Validity and effect of liens or pledges

Sec. 4b. Each lien on or pledge of revenues derived from the project or on the reserve fund, depreciation and replacement fund, or other reserves or funds established in connection with bonds issued under this Act is valid and enforceable from the time of payment for and delivery of the bonds authorized by the resolution or order of the commissioners court creating or confirming the lien or pledge. Such a lien or pledge is fully effective as to items then on hand or subsequently received, and the items are subject to such a lien or pledge without physical delivery of the items or further act. The lien or pledge is valid and enforceable against any party having a claim of any kind in tort, contract, or otherwise against the county, regardless of whether the party has notice of the lien or pledge. Neither a resolution or order authorizing the issuance of bonds under this Act nor any other instrument by which the lien or pledge is created or confirmed need be filed or recorded except in the regular records of the county.

Sec. 4b added by Acts 1983, 68th Leg., p. 4045, ch. 630, § 2, eff. Aug. 29, 1983.

\* \* \* \* \* \*

### Operating board

Sec. 5b. Any county proceeding hereunder, upon a determination by the Commissioners Court thereof that a project could be developed, constructed, operated, and managed better and more efficiently by an operating board, may provide for the appointment of such an operating board. An operating board so appointed shall have and may exercise, subject to such limitations and restrictions as may be prescribed by the Commissioners Court, the same power and authority, including the power of eminent domain, as may be exercised by the Commissioners Court in regard to the development, construction, operation, and management of a project; provided, however, that an operating board appointed hereunder shall not have the power to tax or to borrow money. Without limiting the generality of the foregoing, such an operating board shall have the power and authority, subject to the restrictions and limitations prescribed by the Commissioners Court, to design the project, to acquire necessary lands or rights-of-way or other property for the project by purchase, condemnation, or otherwise, to establish and revise from time to time the rates and tolls charged for use of said project, to establish and prescribe the methods, systems, procedures, and policies for the operation, maintenance, and use of the project, and to employ consultants, attorneys, engineers, financial advisors, agents, and other employees or contractors in connection with the development, construction, operation, and management of the project.

Sec. 5b added by Acts 1977, 65th Leg., p. 2166, ch. 861, § 6, eff. Aug. 29, 1977.

\* \* \* \* \* \*

### Bonds for payment of outstanding toll bridge revenue bonds

Sec. 8a. When any county has heretofore issued or may hereafter issue bonds under authority of Chapter 304, Acts of the Regular Session of the Fiftieth Legislature, 1947, as amended [1] payable from the revenues derived from tolls collected for the use of a project and which bonds are also payable from an unlimited tax authorized under Article III, Section 52, of the Constitution, and laws enacted pursuant thereto, such county acting through its Commissioners Court may, after being duly authorized in the manner provided by Article III, Section 52, of the Constitution, and laws enacted pursuant thereto, authorize, issue, and sell its bonds and use the proceeds therefrom in an amount sufficient to call, redeem, and pay off its outstanding tax and revenue bonds pursuant to the terms of said bonds, and thereby remove the pledge of the revenues from such facility and the covenants in connection with said bonds and the operation of said project, and make such project available for the free use of the public.

Sec. 8a added by Acts 1967, 60th Leg., p. 292, ch. 136, § 1, eff. May 8, 1967; amend-

ed by Acts 1977, 65th Leg., p. 2166, ch. 861, § 7, eff. Aug. 29, 1977.

[1] This article.

\* \* \* \* \* \*

Section 8 of the 1977 amendatory act provides: "If any word, phrase, clause, sentence, or part of this Act shall be held by any court of competent jurisdiction to be invalid or unconstitutional, it shall not affect any other word, phrase, clause, sentence, or part of this Act, and such remaining portions shall remain in full force and effect."

**Cross References**

Bond issue to refund outstanding causeway revenue bonds, see art. 795a.